**Charline PACOUREK, Plaintiff,**

v.

**INLAND STEEL COMPANY, INC., Defendant.**

**No. 94 C 0130.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 16, 1996.

See also, 858 F.Supp. 1393.

Richard F. Nelson, McBride, Baker & Coles, Chicago, Illinois, James P. Nagle, Querry & Harrow, Ltd., Wheaton, Illinois, David H. Ortiz, David H. Ortiz & Associates, Chicago, Illinois, for plaintiff.

Thomas G. Abram, Richard C. Robin, Lawrence L. Summers, Paula Kay DeAngelo, Vedder, Price, Kaufman & Kammholz, Chicago, Illinois, for defendant.

## *MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

Before the court is defendant Inland Steel Company's ("Inland Steel") motion for partial summary judgment pursuant to Federal Rule

of Civil Procedure 56(b). For the reasons that follow, the court denies Inland's motion for summary judgment.

## I. BACKGROUND

The following facts are uncontested.[1] Plaintiff Charline Pacourek ("Pacourek") started working at Inland Steel in March 1975. In 1987, Pacourek began seeing a doctor regarding her infertility. That year, Pacourek missed several days of work because of these doctor appointments. In March 1991, Pacourek began to receive medical treatment for her infertility. In August 1991, Dr. Randall Barnes performed a laparoscopy on Pacourek, and diagnosed Pacourek as having unexplained infertility.

Pacourek began to receive infertility treatment. The treatment consisted of an injection of a natural hormone drug called Pergonal, followed by a process known as intrauterine insemination. Pacourek received treatment on October 6–13, 1991; December 3–10, 1991; January 18–24, 1992; and March 3–10, 1992, but to no avail.[2] Pacourek apparently missed work on at least some of the days on which she underwent treatment.

As of February 1992, Pacourek's supervisor knew that the reason for some of Pacourek's absences was the infertility treatment. On February 12, 1992, the supervisor presented Pacourek with a "90–Day Performance Plan," which stated that Pacourek was not to be absent from work between February 17 and May 15, 1992, unless she provided a letter from a doctor substantiating her absence; that her attendance would be monitored closely; and that if her attendance did not improve, her employment may be terminated. Pacourek provided medical certificates to substantiate her absences on March 10, 1992; July 7, 1992; and July 27, 1992.

On March 17, 1992, the section manager of Pacourek's department, Pacourek's supervisor's supervisor, told Pacourek that she had been designated "high risk" for termination.

On May 21, 1993, another manager of Pacourek's department gave Pacourek a letter informing her that she was terminated, and that her last day of work would be June 11, 1993. June 11, 1993, was Pacourek's last day at Inland Steel.

Pacourek filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 9, 1993. Pacourek received her right-to-sue letter from the EEOC on November 2, 1993, and filed the instant lawsuit in this court on January 7, 1994. Pacourek alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e–2000e–17; the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), an amendment to Title VII; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634; and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213.

Inland Steel now moves for partial summary judgment on Pacourek's ADA claim.

## II. DISCUSSION

### A. Standard of Review

■ A motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden is on the moving party to show that no genuine issues of material fact exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ Once the moving party presents a *prima facie* showing that she is entitled to judgment as a matter of law, the party opposing the motion may not rest upon the mere allegations or denials in its pleadings

---

1. The facts are taken from Inland Steel's Statement of Material Facts pursuant to Local Rule 12(M), Plaintiff's Local Rule 12(N) Response to Defendant's Statement of Material Facts and Additional Facts, and the parties' Final Pretrial Order Ex. A (Joint Statement of Uncontested Facts).

2. In October 1993, Pacourek underwent a successful embryo transfer and became pregnant.

but must set forth specific facts showing that a genuine issue for trial exists. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir.1989). All reasonable factual inferences must be viewed in favor of the non-moving party. *Holland v. Jefferson Natl. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989).

### B. *Retroactive Application of the ADA*

Inland Steel contends that the operative facts in this case occurred prior to July 26, 1992, the date on which the ADA became effective. Therefore, according to Inland Steel, because the ADA does not apply retroactively, Pacourek cannot bring a claim under the ADA.

 If an ADA plaintiff's claim accrued before the effective date of the ADA, the claim is without merit, since the ADA does not apply retroactively. *Dean v. Thompson*, No. 92 C 20388, 1993 WL 169734, *4 (N.D.Ill. 1993) (citations omitted). A cause of action for employment discrimination accrues when the employer tells the employee that her employment is terminated. *See Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 449 (7th Cir.1990), *cert. denied*, 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991); *Pacourek v. Inland Steel Co.*, 858 F.Supp. 1393, 1398 (N.D.Ill.1994). When the discriminatory act occurred is a question of fact. *Lever v. Northwestern University*, 979 F.2d 552, 553 (7th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 661 (1993).[3]

The undisputed facts in this case indicate that on February 12, 1992, Pacourek was told that her attendance would be monitored closely and her employment terminated if her attendance did not improve. On March 17, 1992, Pacourek was told that she had been designated "high risk" for termination. On May 21, 1993, Pacourek was told that her employment was terminated.

Viewing reasonable factual inferences in favor of non-movant Pacourek, *see Holland*, 883 F.2d at 1312, it seems clear that Inland Steel did not communicate to Pacourek its decision to terminate her employment until May 21, 1993. While Pacourek may have had some indications that she was in danger of being fired by February or March 1992, she received no definite word that she was being fired until May 21, 1993. Thus, it appears to the court that Pacourek's cause of action accrued on May 21, 1993, ten months after the ADA became effective.

However, Inland Steel contends that Pacourek's cause of action accrued in March 1992, when she was told that she was in "high risk" of being terminated. The court disagrees. The very words used—"high risk"—indicate that there was a chance that Pacourek would not be terminated. Otherwise, the word "risk" would be meaningless, and the more apt statement would be that Pacourek was fired.

 At best for Inland Steel, a question of fact exists about when Inland Steel made and communicated to Pacourek its decision to terminate Pacourek's employment. *See Lever*, 979 F.2d at 553. This factual issue precludes partial summary judgment in Inland Steel's favor.

### C. *Failure to Raise a Claim under the ADA*

Notwithstanding its title, Inland Steel's current motion for partial summary judgment is akin to Inland Steel's earlier motion to dismiss for failure to state a claim, which the court denied. *See Pacourek v. Inland Steel Co.*, 858 F.Supp. 1393, 1396–97 (N.D.Ill. 1994). Inland Steel contends that Pacourek has no claim under the ADA for two reasons: the status of "unexplained infertility" is not an impairment covered by the ADA, and procreation is not a "major life activity" within the meaning of the ADA and its implementing regulations.

 Under the ADA, a "disability" is "a physical or mental impairment that substan-

---

**3.** The foregoing cases deal with the statute of limitations, but they apply equally to the present case, dealing with the accrual of the cause of action and the effect of a new law. *See Graehling v. Village of Lombard, Illinois*, 58 F.3d 295, 297 (7th Cir.1995).

tially limits one or more of the major life activities." 42 U.S.C. § 12102(2)(A). The court applies a three-pronged analysis to determine whether a condition is a covered disability under the ADA: (1) whether the condition is a physical or mental impairment; (2) if so, whether that impairment affects a major life activity; and (3) whether the major life activity is substantially limited by the impairment. *Pacourek*, 858 F.Supp. at 1404.

### 1. Whether unexplained infertility is an impairment

A "physical or mental impairment" is "[a]ny physiological disorder ... or condition" that affects one or more of a number of listed "body systems." Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act ("ADA regulations"), 29 C.F.R. § 1630.2(h)(1) (1995). Specifically listed as one of the covered "body systems" is the reproductive system. *Id.*

 It defies common sense to say that infertility is not a physiological disorder or condition affecting the reproductive system. In fact, infertility is the ultimate impairment of the reproductive system. Moreover, it does not matter whether the infertility is explained or not. The ADA and regulations under it are simply devoid of any requirement that a physiological disorder or condition have a scientific name or known etiology. Therefore, infertility, whether explained or not, is an impairment under the ADA.

In the present case, no dispute exists over whether Pacourek was infertile. She was. Accordingly, Pacourek had a physical impairment under the ADA.

### 2. Whether infertility affects a major life activity

Inland Steel's main bone of contention is over whether reproduction, obviously the primary activity affected by infertility, is a major life activity. In its earlier *Pacourek* opinion, the court held that it is.

In its earlier opinion, the court based its holding on two reasons. First, the ADA regulations provide that the reproductive system is one of the body systems that can

be impaired under the ADA. 29 C.F.R. § 1630.2(h)(1). If a physiological disorder affecting the reproductive system constitutes an impairment under the ADA, then "it logically follows from that instruction that reproduction is a covered major life activity. Otherwise, it would make no sense to include the reproductive system among the systems that can have an ADA physical impairment." *Pacourek*, 858 F.Supp. at 1404.

Inland Steel urges the court to reject this reasoning and follow that of two courts that criticize *Pacourek*. In *Zatarain v. WDSU–Television, Inc.*, 881 F.Supp. 240 (E.D.La. 1995), the district court found that a plaintiff's argument that relied on *Pacourek* was "faulty because it would allow [the plaintiff] to bootstrap a finding of substantial limitation of a major life activity onto a finding of an impairment." *Id.* at 243. The court found this analysis "circular and unpersuasive." *Id.*

In *Krauel v. Iowa Methodist Medical Center*, 915 F.Supp. 102 (S.D.Iowa Oct. 2, 1995), the court for the Southern District of Iowa followed *Zatarain* in rejecting *Pacourek*. The court described *Pacourek* as reasoning that "reproduction was a major life activity because the reproductive system was included among the systems that can have an ADA impairment." *Krauel*, 915 F.Supp. at 107. The court found that "[t]his reasoning is suspect because it fails to recognize that 'physical or mental impairment' and 'major life activities' are separate and distinct components of the ADA's definition of 'disability.'" *Id.* (citing *Zatarain*, 881 F.Supp. at 243.)

 This court is not dissuaded by *Krauel's* and *Zatarain's* rejection of *Pacourek*, because it finds that those courts overly simplify and thereby miscomprehend the court's reasoning in *Pacourek*. This court does not hold merely that "reproduction [is] a major life activity because the reproductive system was included among the systems that can have an ADA impairment." *Krauel*, 915 F.Supp. at 107. Rather, the court believes that because the EEOC rulemakers included

the reproductive system among body systems that can suffer from an impairment under the ADA, they anticipated that a physiological disorder of the reproductive system may be covered under the ADA. Otherwise, including the reproductive system in the body systems that can be impaired would be superfluous. Since reproduction obviously is one of the activities, and probably the major activity, substantially limited by a physiological disorder of the reproductive system, a reasonable inference is that the EEOC rulemakers contemplated that reproduction may be considered a major life activity.

■ The court emphasizes that the EEOC rules offer persuasive support that reproduction may be considered a major life activity, not that they dictate that result. Nonetheless, a statute's implementing regulations promulgated by the implementing agency can provide " 'an important source of guidance' " on the interpretation of the statute. *School Board of Nassau County v. Arline*, 480 U.S. 273, 279, 107 S.Ct. 1123, 1127, 94 L.Ed.2d 307, *reh'g denied*, 481 U.S. 1024, 107 S.Ct. 1913, 95 L.Ed.2d 519 (1987) (quoting *Alexander v. Choate*, 469 U.S. 287, 304 n. 24, 105 S.Ct. 712, 722 n. 24, 83 L.Ed.2d 661 (1985)). The court finds that such is the case here.

Second, in a case under section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, the Seventh Circuit noted in dictum that the regulations under the Rehabilitation Act "define the protected class of handicapped individuals to include any person with a physiological disorder affecting the reproductive system." *McWright v. Alexander*, 982 F.2d 222, 226–27 (7th Cir.1992) (citing 29 C.F.R. § 1613.702(b)(1)). The court noted that the defendant in that case did not dispute that the plaintiff, who was unable to bear children, had a handicap. *McWright*, 982 F.2d at 226.

The definitions of "handicapped person," "physical or mental impairment," and "major life activities" under the Rehabilitation Act regulations and, respectively, "disability," "physical or mental impairment," and "major life activities" under the ADA regulations are substantially identical. *See Pacourek*, 858 F.Supp. at 1404–05. *Compare* 29 C.F.R. §§ 1613.702(a)(1), (b)(1), and (c) (1995) *with*

29 C.F.R. §§ 1630.2(g)(1), (h)(1), and (i) (1995). In addition, the EEOC's interpretive guidance on the ADA, set forth in the appendix to the ADA regulations, equates the regulations under the ADA with those under the Rehabilitation Act:

> Congress adopted the definition of ["disability"] from the Rehabilitation Act definition of the term "individual with handicaps." By so doing, Congress intended that the relevant case law developed under the Rehabilitation Act be generally applicable to the term "disability" as used in the ADA.

29 C.F.R. § 1630 app. at 401 (citing S.Rep. No. 116, 101st Cong., 1st Sess. 21 (1989) ("Senate Report"); H.R.Rep. No. 485 part 2, 101st Cong., 2d Sess. 50 (1990) ("House Labor Report"); H.R.Rep. No. 485 part 3, 101st Cong., 2d Sess. 27 (1990) ("House Judiciary Report")). *See also Erickson v. Board of Governors of State Colleges and Universities for Northeastern Illinois University*, 911 F.Supp. 316, 322 (N.D.Ill.1995).

Thus, since the relevant definitions under the Rehabilitation Act and ADA are identical, and the case law regarding "handicapped individual" under the Rehabilitation Act also is applicable to the term "disability" under the ADA, the Seventh Circuit's statements in *McWright* have equal force in the present case. Because the Seventh Circuit has implicitly recognized that a woman unable to bear children is handicapped under the Rehabilitation Act, the same should hold true under the ADA.

Several points not covered in the first *Pacourek* deserve addressing, as well. In *Erickson*, a case also brought under the ADA and also involving the plaintiff's infertility treatments, Judge Nordberg found that Congress intended reproduction to qualify as a major life activity. *Erickson*, 911 F.Supp. at 323. Judge Nordberg noted:

> For example, a House report on the ADA, in a section entitled "Explanation of Legislation—Definition of the Term Disability," states that a "person infected with the Human Immunodeficiency Virus is *covered under the first prong of the definition of the term 'disability' because of a substan-*

*tial limitation to procreation* and intimate sexual relationships."

*Id.* (quoting H.R.Rep. No. 101–485 (Part II), 101st Cong., 2d Sess. 52 (1990), reprinted in 1990 U.S.C.C.A.N. 267, 344) (emphasis added). This court agrees with Judge Nordberg that the House report lends support to the inclusion of procreation as a major life activity under the ADA.

The court also agrees with Judge Nordberg that the Supreme Court's analysis under the Rehabilitation Act militates in favor of considering reproduction a major life activity. In *School Board of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), the Supreme Court held that a teacher with tuberculosis was handicapped under the Rehabilitation Act. Analyzing the definitions of "handicapped person," "physical impairment," and "major life activities," the court noted: "[A]lthough many of the comments on the regulations when first proposed suggested that the definition [of 'handicapped person'] was unreasonably broad, the Department [of Health and Human Services, which promulgated the regulations,] found that *a broad definition, one not limited to so-called 'traditional handicaps,' is inherent in the statutory definition [of 'handicapped individual'*]." *Arline,* 480 U.S. at 280 n. 5, 107 S.Ct. at 1127 n. 5 (quoting 45 C.F.R. § 84 app. A at 310 (1985) (now 45 C.F.R. § 84 app. A at 355 (1994)) (emphasis added).[4] *See also Erickson,* 911 F.Supp. at 322.

■ As the court has already noted, the definitions under the Rehabilitation Act and ADA are substantively equivalent, and the case law under the Rehabilitation Act applies equally to the ADA. Thus, "a broad definition ... not limited to so-called 'traditional [disabilities]' " also is inherent in the statutory definition of "disability" under the ADA. *See id.* Since a definition of "major life activities" is part of the definition of "disability", it follows that "major life activities" is given a broad definition, as well. A broad

definition of "major life activities" should encompass reproduction. Therefore, this court's decision that reproduction should be considered a major life activity is in accord with *Arline.*

■ Similarly, civil rights statutes in general are to be construed liberally to effectuate their remedial purpose. *Stoner v. Department of Agriculture,* 846 F.Supp. 738, 742 (W.D.Wisc.1994) (citing *Keller v. Prince George's County,* 827 F.2d 952 (4th Cir.1987); Norman J. Singer, Sutherland, Statutory Construction, § 60.01 (5th ed. 1992)). The ADA is a civil rights statute. Thus, the court's view of reproduction as a major life activity under the ADA complies with this canon.

Lastly, the court declines to abdicate its decision in *Pacourek* to follow the decisions in *Zatarain* and *Krauel,* because the court finds those decisions to be flawed in their analyses of "major life activities." The *Zatarain* court stated that finding reproduction to be a major life activity would be inconsistent with the list of major life activities included in the ADA regulations. *Zatarain,* 881 F.Supp. at 243. The list includes, but is not limited to, "walking, seeing, speaking, breathing, learning, and working." *See* 29 C.F.R. § 1630.2(i). The court found that reproduction is not engaged in with the same amount of frequency as the other listed activities. It noted that "[a] person is required to walk, see, learn, speak, breath, and work throughout the day, day in and day out. However, a person is not called upon to reproduce throughout the day, every day." *Zatarain,* 881 F.Supp. at 243. The court thus found that it could not "reasonably infer that reproduction is a 'major life activity' based on an analysis of the illustrative list of activities in the regulation." *Id.*

*Krauel* echoed *Zatarain's* comparison of reproduction with the other listed activities and reached the same conclusion. *See Krauel,* 915 F.Supp. at 106 (quoting *Zatarain,* 881 F.Supp. at 243). The *Krauel* court also not-

---

4. The definitions of "handicapped person," "physical or mental impairment," and "major life activities" under both 45 C.F.R. § 84.3 and 29 C.F.R. § 1613.702, discussed earlier in this opinion, are identical. Both sets of regulations were promulgated under the Rehabilitation Act, and the foregoing definitions in both sets of regulations follow from and expound upon the definition of "handicapped individual" set forth in the Rehabilitation Act itself, 29 U.S.C. § 706(7)(B).

ed that reproduction, unlike the EEOC's list of activities, is a lifestyle choice. *Krauel,* 915 F.Supp. at 106. The court noted that "[s]ome people choose not to have children, but all people care for themselves, perform manual tasks, walk, see, hear, speak, breathe, learn, and work, unless a handicap or illness prevents them from doing so." *Id.* n. 1.

 These decisions interpret "major life activities" far too narrowly. They define a major life activity in terms of quantity, rather than quality. In other words, because reproduction is not something that a person must do every moment of every day, it is not a major life activity. However, neither the ADA nor its implementing regulations either explicitly or impliedly defines "major life activities" by the frequency with which they occur. Rather, the EEOC's interpretive guidance gives a broad, common-sense, and decidedly non-quantitative meaning to the term. According to the EEOC, " '[m]ajor life activities' are those basic activities that the average person in the general population can perform with little or no difficulty." 29 C.F.R. § 1630 app. at 402 (citing Senate Report at 22; House Labor Report at 52; House Judiciary Report at 28). The EEOC's guidance mentions nothing of the frequency with which the basic activities must occur.

In essence, *Zatarain* and *Krauel* trivialize reproduction. At the risk of waxing philosophical, none of us, nor any living thing, would exist without reproduction. Many, if not most, people would consider having a child to be one of life's most significant moments and greatest achievements, and the inability to do so, one of life's greatest disappointments. Since time immemorial, people have procreated, not as a lifestyle choice, but as an integral part of life. In fact, to call working a major life activity, but to deny the same status to reproduction, seems ludicrous. The court suspects that people have been producing offspring for far longer than they have been working. This holds all the more true for women, who, until relatively recently, had to choose between working and childbearing, and more frequently chose the latter.

In short, the court declines to limit "major life activities" to those activities that occur with frequency or are a necessary part of daily existence. To do so would be to ignore the EEOC's interpretation of the term, courts' directives to construe statutes like the ADA broadly, and the momentousness of reproduction. Accordingly, the court finds that reproduction is a major life activity under the ADA.

### 3. Whether the major life activity of reproduction is substantially limited by infertility

Since the court has found that infertility is an impairment and reproduction is a major life activity under the ADA, suffice it to say that infertility substantially limits reproduction.

 Accordingly, because the court finds that Pacourek had a physical impairment that substantially limited a major life activity, the court concludes that Pacourek was disabled according to the ADA, and therefore has a claim under the ADA.

### *III. CONCLUSION*

For the foregoing reasons, defendants' motion for partial summary judgment is denied.