**Claudia S. BERK, Plaintiff,**

v.

**BATES ADVERTISING USA, INC. f/k/a Backer Spielvogel Bates, Inc., Defendant.**

**No. 94 Civ. 9140(CSH).**

United States District Court, S.D. New York.

Nov. 18, 1998.

Jerome Lee Davidow, New York City, for plaintiff.

Camhy, Karlinsky & Stein, New York City, John B. Grant, Jr., of counsel, Swidler, Berlin, Shereff & Friedman, Washington, D.C., Gerald S. Hartman, of counsel, for defendant.

*ORDER*

HAIGHT, Senior District Judge.

In this case of alleged discrimination based upon the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.,* defendant renews its motion for summary judgment dismissing the complaint which this Court denied in an opinion dated December 3, 1997, 1997 WL 749386 (S.D.N.Y.) (*"Berk I"*), familiarity with which is as-

sumed. Plaintiff cross-moves for partial summary judgment holding that she is disabled within the meaning of the ADA. Both motions are based upon decisions handed down subsequent to *Berk I* by Courts whose rulings are binding on this Court. I have considered those rulings in light of the record generated by defendant's prior summary judgment motion as well as the current cross-motions.

For the reasons that follow, defendant's motion is denied and plaintiff's cross-motion is granted.

## I.

The present cross-motions turn upon the ADA's definition of "disability," found in § 12102(2):

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such impairment.

Defendant Bates Advertising USA, Inc. ("Bates") contends on its renewed motion that, under the Second Circuit's ruling in *Colwell v. Suffolk County Police Department*, 158 F.3d 635, 1998 WL 718358 (2d Cir., October 15, 1998), and based on the evidentiary record developed during discovery, plaintiff cannot satisfy any of the three statutory definitions as a matter of law.

Plaintiff Claudia S. Berk contends on her cross-motion that, under the Supreme Court's ruling in *Bragdon v. Abbott*, — U.S. ——, 118 S.Ct. 2196, 141 L.Ed.2d 540 (June 25, 1998), she is entitled to be characterized as disabled under the ADA as a matter of law.

1. *School Board of Nassau County v. Arline*, 480 U.S. 273, 281, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987).

2. At that point in the text of *Berk I*, I dropped footnote 3, which cited plaintiff's deposition testimony that after treatment for cancer she was unable to have children, and which then stated that she remained "disabled in another way" because "[t]he inability to reproduce and bear children constitutes a limitation on a major life

## II.

In *Berk I*, which held, *inter alia*, that Berk had made a *prima facie* showing of disability as defined by the ADA, I attached considerable significance to the fact that she had been hospitalized for surgery for breast cancer, the physical impairment that underlies her claim. First, I wrote that because "[p]laintiff missed work and was in and out of the hospital on three occasions over the course of two months for surgical procedures," the record contained "sufficient evidence of a disability under the ADA, as her breast cancer substantially limited her major life activities." 1997 WL 749386 at *5. While, at that point, I did not precisely identify the major life activity or activities affected, the context shows that working was the implicated activity.

Second, I wrote that "upon plaintiff's return to work, her hospitalization established a record of impairment as articulated by the Supreme Court in *Arline*." [1] *Id.* I concluded in *Berk I*:

Accordingly, at all pertinent times plaintiff has demonstrated that she had a disability under the statute: first, a physical impairment under § 12102(2)(A), and then a record of such impairment under § 12102(2)(B).

*Id.*[2]

Bates argues persuasively that this Court's focus in *Berk I* upon Berk's hospitalization cannot survive the Second Circuit's opinion in *Colwell*.

*Berk I* concluded, in substance, that a plaintiff's hospitalization *ipso facto* established an impairment sufficient to satisfy subsection (A) of the statutory definition of disability, and that the medical records inevitably generated by that hospitalization *ipso facto* satisfied subsection (B).

activity, and so plaintiff remained disabled under the statute." For that proposition, I cited *Pacourek v. Inland Steel Co.*, 916 F.Supp. 797, 802 (N.D.Ill.1996). In *Bragdon*, — U.S. at ——, 118 S.Ct. at 2205, the Supreme Court has now held that "reproduction is a major life activity for the purposes of the ADA." That holding in *Bragdon* underlies plaintiff's cross-motion, discussed under Point III, *infra*.

In *Colwell*, the Second Circuit reversed a jury verdict in favor of a police sergeant, one Ellinger, and remanded the case to the district court with instructions to enter judgment for defendants.[3] Ellinger suffered a cerebral hemorrhage in 1984, after which he was hospitalized for 30 days, and remained at home for an additional six months. He returned to work in June 1985, at which time he was assigned to light-duty status. 158 F.3d at 636. Ellinger contended in his ADA action that his police department superiors bypassed him for promotion because of his disability, in violation of the statute.

Ellinger described at trial the remaining symptoms affecting him and the job limitations recommended by his physician, which he continued to follow after being returned to full-duty status. The court of appeals regarded that evidence as "insufficient to show that Ellinger was significantly restricted in his ability to work at a class or broad range of jobs," 158 F.3d at 644 (internal quotation marks omitted), a showing that the court held essential to proof of a "disability" under the ADA, § 12102(2)(A).

As has plaintiff at bar, Ellinger relied upon his hospitalization, and the records of that hospitalization, to satisfy subsection (B). The Second Circuit rejected that theory. The court acknowledged that "[e]ven without a showing of substantial limitation of a major life activity, the ADA's definition of 'disability' can be satisfied by 'a record' of an impairment that substantially limits one or more major life activities." 158 F.3d at 644. But

"[t]he record must be one that shows an impairment that satisfies the ADA; a record reflecting a plaintiff's classification as disabled for other purposes or under other standards is not enough." *Id.* The court of appeals continued:

> Ellinger's hospitalization is certainly a record of an impairment, and the hemorrhage was certainly an impairment, but Ellinger was required to show that the impairment for which he was hospitalized was imposing a substantial limitation on one or more of his major life activities.

*Id.* at 645. That showing, the court held, Ellinger failed to make, reasoning that

> A jury could reasonably find that Ellinger was unable to work during his recuperation from the hemorrhage (one month in the hospital and six months at home), but a seven-month impairment of his ability to work, with the non-particularized and unspecific residual limitations described on his police work, is of too short a duration and too vague an extent to be "substantially limiting."

158 F.3d at 645.

Given the Second Circuit's analysis in *Colwell*, I can no longer give Berk's hospitalization and convalescence controlling weight on the existence of a disability under the ADA.[4]

The Second Circuit also recognized in *Colwell* that subsection (C)'s definition of disability, *i.e.* whether a plaintiff is "regarded as" having a disabling impairment by the em-

---

**3.** Two other plaintiff police officers suffered the same litigation fate. I do not discuss them in text because it is the circumstances in Ellinger's case that are particularly instructive in the case at bar.

**4.** As noted, in holding that Berk's hospitalization for cancer surgery brought her within the "record" definition of disability under subsection (B), I relied upon *Arline*, 480 U.S. at 281, 107 S.Ct. 1123, where the Supreme Court said of plaintiff's tubercular condition: "This impairment was serious enough to require hospitalization, a fact more than sufficient to establish that one or more of her major life activities were substantially limited by her impairment." I make no apology for originally applying that ruling of the Supreme Court to the case at bar, but cannot persist in doing so because the Second Circuit in *Colwell*, 158 F.3d at 645, citing and quoting

*Burch v. Coca-Cola Co.*, 119 F.3d 305, 317 (5th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 871, 139 L.Ed.2d 768 (1998), gives *Arline* a narrow reading. In the Fifth Circuit's words in *Burch*, adopted by the Second Circuit in *Colwell*, *Arline*

> cannot be construed to obviate the requirement, explicit in the ADA and its implementing regulations, that purported conditions be examined to ascertain whether a specific condition substantially limited a major life activity. The ADA requires an individualized inquiry beyond the mere existence of a hospital stay.... [The contrary reading of *Arline* ] would work a presumption that any condition requiring temporary hospitalization is disabling—a presumption that runs counter to the very goal of the ADA.

Whether or not I agree with the Second Circuit's reading of *Arline* is quite beside the point.

ployer, turns upon questions of the employer's perception and intent, not whether the employee in fact has a disability. 158 F.3d at 646. "It is not enough, however, that the employer regarded that individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA," a burden which required the plaintiff police officers in *Colwell* to prove that "the County perceived [them] to be incapable of working in a broad range of jobs suitable for persons of their age, experience, and training." *Id.* (internal quotation marks omitted). The court of appeals held that they failed to carry that burden.

*Colwell* clearly strengthens Bates' hand, particularly with respect to the emphasis which *Berk I* placed upon plaintiff's hospitalization. But it does not entitle Bates to summary judgment dismissing the complaint on the theory that Berk cannot prove that she was disabled under any of the three statutory definitions. One reason for that is the Supreme Court's post-*Berk I* decision in *Bragdon,* upon which Berk bases her cross-motion, and to which I now turn.

### III.

*Bragdon* arose under a different section of the ADA, 42 U.S.C. § 12182(a), which prohibits discrimination on the basis of disability at any "place of public accommodation," a phrase that includes the "professional office of a health provider," § 12181(7)(F). However, the statutory definition of "disability" is the same as in the case at bar.

Plaintiff in *Bragdon* had been infected with HIV since 1986. For that reason, she was refused treatment in the defendant dentist's office in 1994. The Supreme Court granted certiorari to review two questions, the first being "whether HIV infection is a disability under the ADA when the infection has not yet progressed to the so-called symptomatic phase." —— U.S. at ——, 118 S.Ct. at 2200.

The Court answered that question in the affirmative after a two-pronged analysis. First, it held that an HIV infection "is an impairment from the moment of infection," within the ADA's meaning of the word "impairment." —— U.S. at ——, 118 S.Ct. at 2204. The second prong arose because "the statute is not operative, and the definition not satisfied, unless the impairment affects a major life activity." *Id.* Plaintiff's claim that "the HIV infection placed a substantial limit on her ability to bear children" required the Court to ask "whether reproduction is a major life activity." *Id.* at 2205. The Court held that "reproduction is a major life activity for the purposes of the ADA," *id.,* and that plaintiff's HIV infection "substantially limited her ability to reproduce in two independent ways," namely, risk of infecting the man, and risk of infecting the child. *Id.* at 2206.

Reproduction as a major life activity is relevant to the case at bar because plaintiff Berk was advised by her treating physicians, including her gynecologist for many years, that her particular type of breast cancer would put her life at risk if she became pregnant; and that a hysterectomy (surgical removal of the uterus) and bilateral oophorectomy (surgical removal of both ovaries) were advisable precautions against a spread or recurrence of cancer, as alternatives to chemotherapy (plaintiff did undergo post-cancer operation radiation). Prior to the diagnosis of her breast cancer, plaintiff had been diagnosed with uterine fibroids, a condition which may indicate the advisability of a surgical procedure called a myomectomy (surgical removal of the fibroids) before becoming pregnant; but plaintiff abandoned any thought of that procedure when she agreed to the medically recommended and cancer-related hysterectomy and oophorectomy, which would of course put an end to any possibility of natural childbirth. Those surgical procedures were performed shortly after Bates terminated plaintiff's employment.

If one accepts the soundness of plaintiff's medical advice, upon which her most recent affidavit says she reluctantly acted, then it is clear that during the period between Berk's return to work at Bates after her cancer surgery and Bates' subsequent termination of her employment, Berk suffered from a physical impairment (cancer and its accompanying possibility of recurrence) which substantially limited the major life activity of reproduction in two ways: the cancer made pregnancy unduly risky for Berk; and the

cancer also rendered advisable operations which would destroy any chance of reproduction.

At oral argument on the cross-motions on November 12, 1998, counsel for Berk stated that these propositions would be established at trial by the treating physicians' descriptions of their recommendations, and Berk's testimony that she accepted them. Counsel for Bates characterized Berk's reliance upon reproduction as a major life activity as a brand-new theory, and argued that if Berk were permitted to rely upon it at trial, Bates was entitled to obtain and present medical opinion testimony challenging the soundness of the medical advice that Berk received from her treating physicians.[5] This would require a continuance of the trial, now scheduled to begin on November 30, 1998. Counsel for Berk opposes the introduction of such evidence, and opposes a continuance.

I think that, in the particular circumstances of the case, the medical evidence hypothesized by Bates would not be relevant to the issues. Accordingly, I would not receive it, and there will be no continuance.

Preliminarily, I note that the effect of Berk's cancer upon her ability to reproduce is not a new life-activity theory. Berk testified at her deposition on February 9, 1996:

Q. At the time that you returned to work, did you have any physical impairment that substantially limited one or more of your major life activities?

A. Yes.

Q. What was that? What was that impairment that substantially limited one or more of your life activities?

A. Well, one thing that we already talked about is my inability to travel.

Q. Was there any other impairment?

A. Yes.

Q. What was it?

A. I was no longer able to have children.

Dep. 262–63.

Counsel for Bates did not follow up on Berk's reference to the reproductive life activity, but the storm signals were flying. Furthermore, this Court's opinion in *Berk I*, 1997 WL 749386 at *5 n. 3, having referred to that deposition testimony, went on to say that "[t]he inability to reproduce and bear children constitutes a limitation on a major life activity, and so plaintiff remained disabled under the statute." That holding not only presages the Supreme Court's identical conclusion in *Bragdon*, which of course I find gratifying, but also constitutes the law of the case. Finally, the nature of the advice given to Berk by her physicians was further flagged for defendant's counsel in a letter report to him dated May 4, 1998 from Naomi Goldstein, M.D., a psychiatrist appointed on behalf of defendant. Having taken Berk's history and reviewed her medical file, Dr. Goldstein wrote to counsel, in part: "Ms. Berk's physicians did not want her to become pregnant because of the cancer and recommended a hysterectomy rather than a myomectomy (surgical removal) for the fibroids."

More to the point on relevance, the medical advisability of at least delaying pregnancy after breast cancer is not in dispute. The medical text relied upon by defendant, *Williams, Obstetrics* (20th Ed.), states at page 1284: "Recommendations for future pregnancies in women successfully treated for breast malignancy are based on several factors, including consideration for recurrence. *It seems reasonable to advise a delay of 2 to 3 years,* which is the most crucial observation period." (emphasis added). That cautionary advice, from his own cited text, left defendant's counsel in the position of having to assert at oral argument that, following breast cancer surgery, "it's not a *certainty* that you have to wait two to three years or four years or five years not to have children." Tr. 64 (emphasis added). The problem with that argument is that certainty of consequence does not determine whether an impairment "substantially limits" a major life activity for ADA purposes; risk alone will suffice. *Bragdon* makes that clear. The defendants there pointed to medical evidence in the record that "antiretroviral therapy can lower the risk of perinatal transmission [of

---

**5.** I do not understand defendant's counsel to say that he is presently armed with such medical opinions. His intention would be to try to find experts willing to express them.

HIV] to about 8%." —— U.S. at ——, 118 S.Ct. at 2206. While plaintiff disputed that percentage, the Court did not perceive the issue as material:

> We need not resolve this dispute in order to decide this case, however. It cannot be said as a matter of law that an 8% risk of transmitting a dread and fatal disease to one's child does not represent a substantial limitation on reproduction. The Act addresses substantial limitations on major life activities, not utter inabilities.

*Id.*

So, by analogy to the case at bar, even if other physicians disagreed with the particular recommendations made by Berk's physicians, the jury would not need to resolve that dispute, because it is common medical ground that while Berk was at Bates following her cancer surgery, she should not have become pregnant.[6] That is sufficient to establish that during the time when Bates subjected Berk to the employment decisions of which she complains, culminating in termination, Berk had a physical impairment which substantially limited her major life activity of reproduction. Subsection (A) is accordingly satisfied.[7]

For the foregoing reasons, the Court grants plaintiff's motion for partial summary judgment holding that she was disabled under the ADA during the period of her employment by defendant subsequent to her breast cancer surgery.

### IV.

This opinion expresses no view as to whether the evidence will also entitle plaintiff to argue to the jury that she was also substantially limited in the major life activity of working. It is not entirely clear from the most recent submissions of counsel just what position plaintiff now takes on that issue.

Further consideration may await the conclusion of plaintiff's case in chief.

This opinion also expresses no view as to whether plaintiff will be able to prove that defendant discriminated against her because of her disability. The present cross-motions address only the issue of whether plaintiff was disabled under the ADA at the pertinent times. In any event, as the Second Circuit has recently warned, "in an employment discrimination case when, as here, the employer's intent is at issue, the trial court must be especially cautious about granting summary judgment." *Kerzer v. Kingly Manufacturing,* 156 F.3d 396, 400 (2d Cir.1998).

Defendant's motion is denied. Plaintiff's cross-motion is granted.

SO ORDERED.

---

**6.** That being the case, the medical opinion evidence conceptualized by defendant's counsel is not relevant under Rule 401, Fed.R.Evid., since it would not address "any fact that is of consequence to the determination of the action." Alternatively, such evidence would not pass muster under Rule 403, since any relevance it might possess would be substantially outweighed by the dangers of confusion of the issues or misleading the jury, or by considerations of undue delay and waste of time.

**7.** It is not relevant to this analysis that Berk did not undergo the hysterectomy and oophorectomy until after Bates terminated her. The substantial limitation on reproduction imposed by medically advised delay in becoming pregnant existed prior to termination.