**Laura R. LEHMULLER, Plaintiff,**

v.

**INCORPORATED VILLAGE OF SAG HARBOR, and the Sag Harbor Village Police Department, Defendants.**

**No. CV 95–2323 (ADS).**

United States District Court,
E.D. New York.

Nov. 11, 1996.

Patricia Weiss, P.C. by Patricia Weiss, Sag Harbor, NY, for Plaintiff.

Jaspan Schlesinger Silverman & Hoffman, L.L.P. by Laurel R. Kretzing, Garden City, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The defendants, the Incorporated Village of Sag Harbor and the Sag Harbor Police Department (collectively the "Village" or the "defendants"), move pursuant to Fed. R.Civ.P. 56 for summary judgment in their favor in this pregnancy discrimination action brought by the plaintiff Laura R. Lehmuller ("Lehmuller" or the "plaintiff") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(2), as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k); the New York State Human

Rights Law, N.Y.Exec.Law § 296–a; the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.;* and a claim under 42 U.S.C. § 1983 in the context of her First Amendment right to petition the government for redress.

The plaintiff alleges that the defendants have discriminated against her because of her gender, her pregnancy, and her physical disability. In addition, Lehmuller claims that the Village took retaliatory action against her in response to her discrimination claim filed with the Equal Employment Opportunity Commission, which she contends is her protected right to petition the government for a redress of grievances under the First Amendment.

Presently before the Court is the defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56 and plaintiff's cross motion for summary judgment.

### I. *Background*

#### A. *The Parties*

The plaintiff Laura R. Lehmuller is a resident of New York State and is a female and full-time police officer who has been employed by the defendants since 1988. The defendants are the Incorporated Village of Sag Harbor, a municipality located in Suffolk County, and the Sag Harbor Village Police Department. The Police Department currently consists of ten officers and Chief Joseph J. Ialacci.

#### B. *Duties as a Village Police Officer*

Generally, all police officers within the Police Department are required to work rotating shifts and to perform all duties associated with police work. Patrol duty requires, among other things, that officers patrol the Village both on foot and in a police vehicle, respond to hazardous and medical calls, and perform routine after-hours door checks of commercial businesses. Patrol duty may require an officer to travel at high speeds in a police vehicle, to break up "bar fights" and domestic disputes, and to render assistance to the mentally infirm.

In addition, Village police officers are required to carry weapons, wear bullet proof vests and gun belts that contain two sets of handcuffs, a radio, mace, and extra bullets.

#### C. *The Police Department's Disability Policy*

Since Chief Ialacci joined the Police Department in 1986, the Department has followed an unwritten policy whereby officers who become disabled due to illness or off-duty injury are required to use their sick leave, holidays, vacation days, or compensatory time for the period that they are unable to perform their normal patrol duties. Officers injured in the line of duty who are unable to conduct their patrol duties, but who can perform routine clerical tasks, are required to report for duty at headquarters as their physical condition permits. This policy purportedly stems from New York General Municipal Law § 207–c that mandates that officers injured in the line of duty receive full pay whether they work or not. According to the defendants, the policy is designed to insure that officers perform whatever work they can in exchange for their continued pay.

When the plaintiff was hired as the first and only woman police officer, the Village had no established policy regarding light-duty for pregnant officers. When Lehmuller announced her pregnancy and as a result, requested light-duty, Chief Ialacci referred the matter to the Mayor and Board of Trustees of the Village (the "Board"). Upon consideration of the light-duty policy, the Mayor and the Board decided that the Village would treat pregnancy as it did other non-job related injuries. Therefore, the plaintiff would be required to use her sick leave, holidays, vacation days, or compensatory time for the period that she would be unable to perform her normal patrol duties as a result of her pregnancy.

### II. *The Complaint*

On October 22, 1993, Lehmuller filed a charge with the EEOC alleging that the Village discriminated against her because of her pregnancy in violation of Title VII, as a result of the denial of her request for light duty work. On April 6, 1995, the EEOC issued to the plaintiff a right-to-sue letter.

The plaintiff continued to perform her usual job responsibilities until November 27, 1993, when she fell and sustained an on-the-job back injury while on patrol. Lehmuller reported the accident and was taken to the Southampton Hospital emergency room where she received limited treatment due to her pregnant condition. Subsequently, Lehmuller's personal orthopedic physician instructed her not to return to work. Lehmuller filed a workers' compensation claim and, on December 6, 1993, the Village prepared an "Employer's Report of Work–Related Accident/Occupational Disease."

On December 15, 1993, Chief Ialacci mailed a certified letter to Lehmuller asking that she submit to an examination by Dr. Reese at Suffolk County Headquarters to evaluate her back injury. Lehmuller complied with the Chief's request. Dr. Reese concluded, contrary to Lehmuller's personal doctor, that Lehmuller could perform light-duty work. The plaintiff was notified of the decision and subsequently returned to work on or about January 17, 1994. She was assigned to "Headquarters-schedule" light-duty with responsibilities that consisted of taking walk-in window complaints and assisting with clerical work as a result of her on-the-job injury.

Lehmuller continued to work until she gave birth to her son on April 21, 1994 and used her holiday, sick, vacation, and personal time to remain at home until September 15, 1994 when she returned to work.

Lehmuller filed this lawsuit alleging that the Village discriminated against her because of her pregnancy in violation of both Title VII and the Pregnancy Discrimination Act. In addition, the plaintiff claims discrimination because of her back-injury disability in violation of the Americans With Disabilities Act ("ADA"). Finally, the plaintiff maintains that the defendants deprived her of her federal right to free speech based on the alleged retaliation against her for filing the EEOC claim. Specifically, Lehmuller contends that the Village unlawfully required a second examination of her back injury that resulted in her return to work contrary to her own doctor's advice. Further, Lehmuller asserts that her EEOC claim is a protected right to petition the government for redress under the First Amendment and, therefore, the Village's alleged retaliatory actions violated her constitutional right.

### III. *Discussion*

#### A. *Standard for Summary Judgment*

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c) (summary judgment standard). The court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995); *Twin Lab., Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United Nat'l Ins. Co. v. The Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *See Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)); *see also Nat'l Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Vann v. New York City,* 72 F.3d 1040, 1048 (2d Cir.1995).

Mere conclusory allegations, speculation or conjecture will not, however, avail a party resisting summary judgment. *See Western*

*World,* 922 F.2d at 121. If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See United Nat'l,* 988 F.2d at 354–55; *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). Finally, the court is charged with the function of "issue finding," not "issue resolution." *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994).

It is within this framework that the Court addresses the grounds for the present motions for summary judgment.

### B. *Title VII of the Civil Rights Act of 1964*

Section 2000e–2 of Title VII provides that:
(a) [i]t shall be an unlawful employment practice
  (1) to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, or sex....

42 U.S.C. § 2000e–2.

Title VII was amended by the Pregnancy Discrimination Act, § 2000e(k), which provides that discrimination:

on the basis of sex include[s] ... [discrimination] "on the basis of pregnancy" ... [and] a woman affected by pregnancy shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in § 2000e–2(h) of this title shall be interpreted to permit otherwise.

42 U.S.C. § 2000e(k).

Two types of discrimination are actionable under Title VII: (1) "disparate treatment", and (2) "disparate impact." *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (1977) (acknowledging both claims as actionable). Disparate treatment occurs where an employer "treats some people less favorably than others" because of their sex, or where a facially neutral policy is merely a pretext for intentional employment discrimination. *See Connecticut v. Teal,* 457 U.S. 440, 446, 102 S.Ct. 2525, 2530, 73 L.Ed.2d 130 (1982).

Disparate impact claims, on the other hand, "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Teamsters,* 431 U.S. at 335, 97 S.Ct. at 1854; *see also* 42 U.S.C. § 2000e–2(k)(1)(A). Lehmuller alleges that the Village has discriminated against her under both theories.

#### 1. *Lehmuller's discrimination claims*

#### A. *Disparate Treatment*

The Second Circuit recently reiterated the standards applicable in pregnancy discrimination cases in *Quaratino v. Tiffany & Co.,* 71 F.3d 58 (2d Cir.1995) (setting forth the standard in reduction in force cases). In a pregnancy discrimination case, brought pursuant to 42 U.S.C. § 2000e(k), the plaintiff has the initial burden of establishing a *prima facie* case by a preponderance of the evidence. *Id.* at 64. To prove a *prima facie* case, the plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she satisfactorily performed her job duties; (3) she suffered an adverse employment action; and, (4) in circumstances giving rise to an inference of discrimination. *Id.* The burden of production then shifts to the employer to articulate a "legitimate, clear, specific and non-discriminatory reason for discharging the employee." *Id.* If the employer satisfies this burden, the plaintiff must prove that the reason proffered was pretextual *and* that intentional discrimination was the real reason for the adverse employment decision. *Id.,* citing, *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515–17, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993).

Applying these standards, the only real issues presented in this Title VII claim is whether the denial of a light duty assignment for her pregnancy occurred under circumstances giving rise to an inference of discrimination, and, if so, whether the plaintiff offered any evidence that the reasons advanced by the defendants for her termination were

pretextual. There is no question that the plaintiff was a member of a protected class; she was a pregnant woman. Moreover, the defendants have not disputed that Lehmuller was qualified for her job or that she suffered an adverse employment decision, namely she was denied light duty. Rather, the parties focus on the fourth element of the *prima facie* case.

■ In support of its motion, the Village contends that the Police Department's treatment of the plaintiff was not discriminatory because the law does not require the defendant to create a different job description to meet the plaintiff's changed requirements based on her pregnancy. The Village maintains that where a pregnant employee is treated the same as a non-pregnant employee, the plaintiff cannot establish a prima facie case of a violation of Title VII. Thus, the defendants contend that they did not act in a discriminatory fashion when they denied Lehmuller a light duty work assignment.

In response to these contentions, the plaintiff alleges that although the Village's disability policy appears to be facially neutral, it was applied to her in an intentionally discriminatory manner. In support of her position, Lehmuller compares the denial of her light-duty request to the light duty assignment of a male officer who was not injured in the line of duty. According to Lehmuller, the plaintiff asserts that the male officer was assigned to light duty when that officer was arrested and charged with, among other things, menacing and driving while intoxicated. The plaintiff argues that this constitutes proof that the Village's policy is not applied equally to pregnant and non-pregnant officers. On the other hand, the Village contends that it had a legitimate, non-discriminatory reason for that assignment, namely that of public safety.

In the Court's view, Lehmuller's allegations constitute evidence that the Village's policy was merely a pretext for discrimination and creates an issue of material fact sufficient to withstand the defendant's summary judgment motion. In addition, material issues of fact preclude summary judgment on the part of the plaintiff. Accordingly, the Village's motion and Lehmuller's cross-motion for summary judgment as to the plaintiff's disparate treatment claim are both denied on the basis that material issues of fact are present.

## B. *Disparate Impact*

To establish a prima facie case of disparate impact on the basis of pregnancy, the plaintiff must show that:

(1) the defendant engaged in a specific employment practice that had an adverse impact on pregnant employees; and

(2) there is a causal link between the challenged employment practice and the adverse impact.

*See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994, 108 S.Ct. 2777, 2788–89, 101 L.Ed.2d 827 (1988).

Lehmuller has shown that the Village adopted a light-duty policy that has an adverse impact on pregnant officers and, therefore, has established a prima facie case of disparate impact discrimination. Once the plaintiff has established a prima facie case, the burden shifts to the defendant to offer a "business necessity" for the policy. *Teamsters*, 431 U.S. at 335, 97 S.Ct. at 1854.

■ The Village contends that light-duty was offered to those officers injured on the job only because New York General Municipal Law § 207–c requires it to continue to pay those officers whether they work or not. The Village claims that the policy was imposed to enable the taxpayers to receive some benefit from the salary it pays to an officer injured in the line of duty. Thus, the Village considers that its policy is the result of business necessity.

Despite the Village's claim, however, it is undisputed that the record reveals that an officer not injured in the line of duty was assigned to light-duty. This discrepancy in the Village's application of its policy presents a genuine issue of material fact, that is, whether the Village truly had a business necessity for its policy. Therefore, the defendants' motion and the plaintiff's cross-motion for summary judgment as to the plaintiff's disparate impact claim are both

denied on the ground that material issues of fact are present.

## C. *New York State Human Rights Law*

■ Section 296 1–a of the N.Y. Executive Law (New York State Human Rights law) provides that:

"[i]t shall be an unlawful discriminatory practice: [f]or an employer [t]o discriminate against any person in his pursuit of such programs or to discriminate against such person in the terms, conditions or privileges of such programs because of race, creed, color, national origin, sex, age, disability or marital status."

N.Y.Exec.Law at § 296(1)(a). Because the New York courts rely on a Title VII analysis to determine claims brought under New York Executive Law § 296(1)(a) (New York State Human Rights Law), *see, e.g., Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1177 (2d Cir.1996), the same material issues of fact are presented by the plaintiff's New York Human Rights Law claim and, therefore, both the motion for summary judgment by the Village and the cross-motion for summary judgment by Lehmuller with respect to the state discrimination claim are similarly denied.

## D. *Americans With Disabilities Act*

The Americans With Disabilities Act ("ADA") provides that:

[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability ... in regard to ... [the] terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

The plaintiff alleges two grounds for her claim that the Village discriminated against her in violation of the ADA. First, Lehmuller states that her pregnancy was a disability within the meaning of the ADA, and, as a result, the Village was required to make reasonable accommodations to enable her to perform her duties. Second, Lehmuller claims that her on-the-job back injury was a disability within the meaning of the ADA and that the Village failed to reasonably accommodate that condition.

### 1. *Pregnancy as a "Disability"*

Under the Americans With Disabilities Act, the term "disability" means; (A) a "physical or mental impairment that substantially limits one or more of the major life activities; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102. The Code of Federal Regulations ("CFR") states that "conditions, such as pregnancy, that are not the result of a physiological disorder are ... not impairments." 29 C.F.R. § 1630.2(h)(1) (1995).

Courts have generally held that pregnancy and related medical conditions are not disabilities under the ADA. *See, e.g., Johnson v. A.P. Prods., Ltd.,* 934 F.Supp 625, 627 (S.D.N.Y.1996) (noting that neither an employee's pregnancy nor its complications were a disability under the ADA); *Gudenkauf v. Stauffer Communications, Inc.,* 922 F.Supp 465, 473 (D.Kan.1996) (holding that pregnancy is not an impairment or disorder under the ADA because pregnancy is a natural consequence of reproduction and it will not be considered an impairment unless it exceeds normal ranges).

■ Lehmuller concedes that pregnancy is not *per se* a disability under the ADA. However, she argues that conditions relating to pregnancy are covered by the ADA. While this may be accurate, Lehmuller admits that she did not have any such condition that could be considered a disability. Further, the plaintiff's reliance on cases such as *Pacourek v. Inland Steel Co.,* 916 F.Supp. 797 (N.D.Ill.1996) and *Chapsky v. Baxter v. Mueuller Div.,* 1995 WL 103299, *3 (N.D.Ill. 1995) is misplaced. In these cases, the courts held that infertility could be considered a disability because the plaintiffs were substantially impaired in reproduction, a major life activity. A normal pregnancy however, does not impair any major life activity; it is merely the natural consequence of reproduction. *See Gudenkauf,* 922 F.Supp. at 473. It follows that, absent any medical conditions related to pregnancy that impairs a major life activity, pregnancy is not a disability within the meaning of the ADA. *See Johnson,* 934 F.Supp. at 627.

Because the coverage of ADA does not extend to normal pregnancies, in this Court's view the plaintiff's ADA claim for disability discrimination in connection with her pregnancy must fail. The Court's finding that a normal pregnancy is not a disability within the meaning of the ADA renders moot the further questions of (1) whether the defendant was required to accommodate the plaintiff's pregnancy and (2) whether the plaintiff was required to exhaust all of her administrative remedies prior to proceeding in this Court.

Accordingly, the defendants' motion for summary judgment dismissing the plaintiff's ADA claim based on pregnancy is granted and the plaintiff's cross motion for summary judgment is denied.

### 2. *Disability as a Result of the On–the–Job Injury*

The plaintiff also alleges that the Village discriminated against her because of a disability that resulted from an on-the-job injury she sustained in a fall while on patrol. In particular, Lehmuller claims that the Village had a duty to make reasonable accommodations for her back injury and that it failed to do so.

The defendants counter that the Village made all necessary reasonable accommodations. More importantly, the defendants argue that even if the Court were to find that all of the plaintiff's allegations are true, Lehmuller is barred from proceeding in this Court because she failed to exhaust her administrative remedies as required by the ADA. *See* 42 U.S.C. § 12117.

■ Claimants under the ADA must follow the same procedures as those imposed by Title VII. *See* 42 U.S.C. § 12117. A claimant under the ADA must first file a claim with the EEOC before a suit may be brought. *Id.; see generally Luna v. Walgreens,* 888 F.Supp. 87 (N.D.Ill.1995). In the present case, it is undisputed that Lehmuller did not file a claim with the EEOC for her back-injury disability. The plaintiff has failed to follow the procedures established under the ADA and Title VII and is, therefore, barred from bringing a suit on this ground. As a result of her failure to exhaust her administrative remedies in relation to her back injury, this portion of her ADA claim must also fail. Accordingly, the defendants' motions for summary judgment dismissing each of the plaintiff's ADA claims is granted and the plaintiff's cross-motion for summary judgment is denied.

### E. *42 U.S.C. § 1983 and the First Amendment*

Section 1983 of the United States Code provides private individuals with a right of action where:

> [a] person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States to ... the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To sustain a section 1983 claim, the plaintiff must satisfy a two-pronged test. She must show that: (1) she was deprived of a federal right by the defendant and, (2) the defendant acted under color of state law. *Greenwich Citizens Comm., Inc. v. Counties of Warren & Washington Indus. Dev. Agency,* 77 F.3d 26, 29 (2d Cir.1996): *see also, Ezekwo v. New York City Health & Hosp. Corp.,* 940 F.2d 775, 778 (2d Cir.1991).

The plaintiff claims that she was deprived of her federal right to petition the government for redress when the defendants, acting under color of state law, retaliated against her for filing an EEOC claim on October 22, 1993. Lehmuller maintains that in order to establish a First Amendment retaliation claim, the plaintiff does not have to prove that she engaged in "speech" addressing matters of "public concern." According to the plaintiff, she only needs to prove that she petitioned a governmental authority about her own particular concerns in order to improve her own situation and that retaliatory conduct then ensued.

On the other hand, the Village contends that the plaintiff's proposition that she does not have to meet the "public concern" test

set forth in the seminal case of *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), is not the state of the law in the Second Circuit. The defendants argue that the right to petition the government is subject to the *Connick* test because it is an assurance of a particular freedom of expression and is governed by the same principles as other First Amendment claims.

■ Because the defendants maintain that the right to petition the government must follow the same analysis as other First Amendment claims, the Village relies on *Connick*, 461 U.S. at 146, 103 S.Ct. at 1689–90, for the proposition that speech must address matters of "public concern" for it to be protected. It is the defendants' position that Lehmuller's filing of the EEOC claim was a purely personal matter and was, therefore, not protected speech. The Court agrees.

■ The right to petition the government for redress of grievances, which is 'an assurance of a particular freedom of expression,' *McDonald v. Smith*, 472 U.S. 479, 482, 105 S.Ct. 2787, 2789, 86 L.Ed.2d 384 is " 'subject to the same constitutional analysis' as the right to free speech." *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir.), *cert. denied*, 510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993) (quoting *Wayte v. United States*, 470 U.S. 598, 610 n. 11, 105 S.Ct. 1524, 1532 n. 11, 84 L.Ed.2d 547 (1985)); *see Ezekwo v. New York Health & Hosp. Corp.*, 940 F.2d 775, 778 (2d Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct 657, 116 L.Ed.2d 749 (1991). Thus, right-to-petition claims are also governed by the interest-balancing principles articulated in *Connick*. *See Schalk v. Gallemore*, 906 F.2d 491, 498 (10th Cir.1990) (per curiam); *Gray v. Lacke*, 885 F.2d 399, 412 (7th Cir.1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990).

The First Amendment protects speech that involves matters of public concern. *Connick*, 461 U.S. at 147, 154, 103 S.Ct. at 1690, 1693–94 (1983); *see Easton v. Sundram*, 947 F.2d 1011, 1015 (2d Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Whether speech is constitutionally protected, namely of public concern, is one of law for the court to decide.

*Connick*, 461 U.S. at 148 n. 7, 103 S.Ct. at 1691 n. 7.

The Second Circuit has ruled that an EEOC complaint based on race and sex discrimination is not a matter of public concern, and therefore, is not protected speech under the First Amendment. *See Ezekwo*, 940 F.2d at 778. Lehmuller's EEOC charge is personal in nature and relates solely to her employment situation. It is not speech of "public concern" and, thus, is not protected speech under the First Amendment. Accordingly, the defendants' motion for summary judgment dismissing the plaintiff's Section 1983 claim is granted and the plaintiff's cross-motion for summary judgment is denied.

## IV. Conclusion

After reviewing the papers submitted by both parties, hearing oral argument, and for the reasons set forth in the record, it is hereby,

**ORDERED,** that the defendants' motion and the plaintiff's cross-motion for summary judgment pursuant to Fed.R.Civ.P. 56 with regard to the Title VII claim are denied; it is further

**ORDERED,** that the defendants' motion and the plaintiff's cross-motion for summary judgment pursuant to Fed.R.Civ.P. 56 with regard to the New York Exec. Law § 296–a (New York State Human Rights) claim are denied; it is further

**ORDERED,** that the defendants' motion for summary judgment pursuant to Fed. R.Civ.P. 56 dismissing plaintiff's claim arising under the Americans with Disabilities Act is granted. The plaintiff's cross-motion for summary judgment is denied; and it is further

**ORDERED,** that the defendants' motion for summary judgment pursuant to Fed. R.Civ.P. 56 to dismiss the 42 U.S.C. § 1983 claim is granted. The plaintiff's cross-motion for summary judgment with regard to this claim is denied.

**SO ORDERED.**